## BOSTON & MAINE RAILROAD v. JOSIAH J. FOLSOM & AL.

A writ of *certiorari* will lie to remove the record of the laying out of a highway by selectmen.
Where the errors or irregularities are merely formal and technical, and the court can see that
no substantial injustice has been done, the writ will be refused; nor will the court seize
upon the fact that such formal or technical error exists, to re-examine the case on its
merits; but will consider only the effect of such errors or irregularities upon the substan-
tial merits of the cause.
Therefore, if there be a defect in the notice, by reason that one of the selectmen who was inter-
ested, acted in giving it, although he did not act in laying out the highway, the writ will
be refused, if the court can see that no injustice has been caused by the defect.
Where the highway in question at one terminus connected with a street laid out by private in-
dividuals, on which, and other streets connected with it, the owners and others had
built and were occupying eighteen or twenty dwelling houses—*held*, that the selectmen
had jurisdiction to lay out the way in question, although the streets referred to were not,
as highways, legally established.
The writ of *certiorari* will not lie to correct an erroneous assessment by selectmen, of damages
to land owners; a specified remedy by appeal being given by statute.

THIS is a petition for a *certiorari* to remove the record of the pro-
ceedings of the selectmen of Exeter, in laying out a highway in that
town, in October, 1862, and praying that the same may be adjudged
erroneous and void.

The causes alleged are : That one of the selectmen was disqualified
to act by reason of interest, and that although he did not act at the hear-
ing and the final laying out, yet he took part in deciding upon, and
ordering, a hearing and notice to the petitioner over whose land the road
passes :

That the highway so laid out is not connected at its westerly ter-
minus with any public highway, nor with any way over which the pub-
lic have a right to pass, nor is said highway of sufficient extent to allow
of residents upon it.

In addition the petitioner proposes by way of amendment, that, in
awarding damages the selectmen did not consider the expenses to which
the railroad would be subjected for a bridge, or keeping a gate at the
crossing.

The answer of the respondents alleges :

1. That the selectmen are not a judicial body and the proceeding can-
not be sustained :

2. That two of the defendants are not now in office, and that such
writ does not lie against the individual members of the board :

3. That substantial justice has been done, and that the proceedings
could not be adjudged void for such errors and irregularities, because
they are formal and do not affect the result :

4. That the highway at the westerly terminus is connected with
Salem street, which has been opened, fenced, dedicated and used as
such for eight or more years, and upon which, and the adjoining streets,
there are twenty dwelling houses, the county jail and other buildings,
and that in March, 1862, the town of Exeter voted at its annual meet-
ing to accept said Salem street as a public highway, said meeting hav-
ing been duly warned for that purpose ; and also that at the easterly end
of said Salem street and adjoining the westerly terminus of the highway
in question, there is an old existing highway, called Summer street,
which has been a public highway for more than twenty years :

5. In respect to the damages awarded, the defendants contend that the petitioners had a remedy by appeal and no other.

There are other matters alleged in the answer, which are unnecessary to state here as they are included in the points already noted.

*Bell & Christie*, for petitioners.

*Stickney*, for defendants.

BELLOWS, J.    We think a writ of *certiorari* lies to remove the record of the laying out of a highway by a board of selectmen.    By our statute they are authorized to lay out any highways in their respective towns, for which there shall be occasion; and for that purpose they are empowered to take any real estate, and any franchise or easement of any corporation, and when their proceedings are duly returned to the town clerk, and recorded, such highways are legally established without any further action by the town or any other tribunal.

In *Robbins* v. *Bridgewater*, 6 N. H. 524, it was held that the power of selectmen to lay out highways is not judicial and that *certiorari* would not lie.    The authority for this seems to have been found in the decisions in Massachusetts and Maine respecting town ways which are *laid out* only by the selectmen, but *established* by the towns; whereas in New Hampshire the whole is done by the selectmen; and subsequently in Massachusetts, where the selectmen and afterwards the mayor and aldermen of the city of Boston were clothed with the same authority as our own selectmen, it has been decided that *certiorari* will lie to such selectmen, mayor and aldermen; *Parks* v. *Boston*, 8 Pick. 218; *Hancock* v. *Boston*, 1 Met. 122; *Stone* v. *City of Boston*, 2 Met. 220; and the same conclusion is reached in the *State* v. *Richmond*, 26 N. H. 234.

The distinction between selectmen generally in Maine and Massachusetts, and selectmen in this State, does not seem to have been adverted to in *Robbins* v. *Bridgewater*, but we are satisfied the difference is substantial, and that the conclusions in *State* v. *Richmond* are correct; and, besides, this question did not arise in *Robbins* v. *Bridgewater*, the inquiry in that case being in respect to a judgment of the court of sessions.

We propose for the present to pass over the question whether this writ will lie against the selectmen out of office, as, however that may be decided, there are other questions to be disposed of.

It is not contended that it was irregular for one of the selectmen who was interested to act with the others in fixing the time and place of hearing and issuing the notices; but it is contended by respondents that substantial justice has been done, and that the court, in its discretion, will refuse the writ.

On that point it is well settled that when the errors or irregularities are merely formal or technical, and the court can see that no substantial injustice has been done, the writ will be refused; *Petition of Landaff*, 34 N. H. 175; and this, we think, is the necessary consequence of the

well established doctrine that the application for the writ is addressed to the sound discretion of the court.

It is argued by the counsel for the petitioners, that, if there be an error in the proceedings, although formal in its character, the writ should be allowed, if, upon the whole case, the court could see that substantial justice had not been done, or, in other words, if there was a defect in the notice, and upon the general merits of the case injustice was done, the proceedings ought to be quashed, even if no injury was caused by the defect in the notice.

We think, however, that.the rule should not be so applied. If injustice has been done in consequence of the irregularity, then the writ should not be refused because the irregularity is formal or technical; but if the court can see that no injustice has been caused by such defect, it would hardly be an exercise of a sound discretion to grant the writ, because in reviewing the merits of the case the court come of the opinion that the.inferior tribunal, to which the question was exclusively confided, had erred in the conclusions it had reached.

It is clear that with the question whether the highway ought or ought not to be laid out, this court has nothing to do, and will not revise the judgment of the tribunal to whom it is committed. To seize upon the fact that an error exists in the proceedings which is merely formal and could not have caused injustice, and in consequence to revise the judgment of the selectmen upon the merits of the case, would be giving to mere form and technicality an effect which does not accord with the spirit of this proceeding.

In this case the notice was defective, but the petitioner appeared and a hearing was had as full and fair, for aught that is shown or suggested, as if no such defect had existed. To be sure, an exception was taken to the notice, but that is not material in this aspect of the case, because it is not put upon the ground of waiver, but upon the ground that no injustice was done, inasmuch as the petitioner had actual notice and an opportunity to be fully heard, and was so heard. In such cases this writ will be refused. *Petition of Landaff*, 34 N. H. 176, and cases cited on that page; *Stone* v. *Boston*, 2 Met. 228.

Besides, it deserves consideration whether the doctrine of *Tucker's Petition*, 27 N. H. 410, does not apply to this case. There it was held that sec. 10 of chap. 53 of the.Compiled Statutes, which provides that any person who had no actual notice might, within one year after the highway is opened and made, apply to the court of common pleas and have his damages awarded him, was to be regarded or as designed to prevent the quashing of proceedings in laying out roads where reports have been accepted and roads established.

That was a petition for a *certiorari*, and it appeared that only one of the petitioners had been notified, and it was held that the writ should not be allowed, upon the ground that the statute referred to, makes sufficient provision for all the grievances under which the petitioners labored.

If that be so, then, by a familiar principle applicable to both writs of error and *certiorari*, the specific remedy can alone be had, to the exclu-

sion of the writ of *certiorari. Savage* v. *Gulliver,* 4 Mass. 178; *Peebles* v. *Rand,* 43 N. H. 342; *Flanders* v. *Bank,* 43 N. H. 383.

If this be so in the case of *Tucker's Petition,* the principle could apply with much more force in this case where actual notice was given. With these views we are of the opinion that the writ should not be granted because of the defect in the notice.

The next question arises from the alleged want of connection of the highway in question, at its westerly terminus, with any other public highway. On this point the facts appear to be that the highway in question, which is merely a railroad crossing at its westerly terminus, connects with Salem street, and thus makes a communication between that street and Summer street, on the opposite side of the railroad.

It appears from the evidence adduced, that Salem street was laid out by J. D. Wadleigh, proprietor of the land, in 1852, in connection with several other streets forming several squares, upon which eighteen dwelling houses have been built; the lots having been sold by said Wadleigh bounded upon those streets; that among them, Salem and Oak streets, were fenced out in 1852, and the others at different periods since. In 1852 there was built on Salem street the dwelling house of said Wadleigh, which is still held by him; and since then, in different years, seven more, being four on each side of that street. The evidence was that these streets have been used as highways since 1852, and that, in 1862 and 1863, they were repaired to some extent by the surveyor of highways who was the said Wadleigh; and at the annual town meeting of Exeter, in 1862, it was voted to accept Salem and Oak streets, and also Grove street, there having been articles in the warrant for that purpose. Under these circumstances, we think the selectmen had power to lay out the road in question, and whether there was occasion for it was a question confided exclusively to them. It is not contended that Salem and Oak streets, and the others connected with them, are legal highways, but that there is access to this crossing at its westerly terminus by other means to such extent as to make a lawful occasion for this highway.

In *State* v. *Canterbury,* 28 N. H. 225–6, it is distinctly assumed that the public may have other means of access to a bridge than by a public highway; as, for example, the town might own the land used for a way or an easement upon it, or the way may have been opened by individuals for public use, so as to give a public license; or the proposed way may be of such extent that it may be useful as a public highway to persons resident upon it. In such case, evidence that there was no public highway with which the proposed way connected would not be conclusive evidence that the want of repairs was a nuisance.

A similar doctrine is held in *State* v. *Rye,* 35 N. H. 380. In *State* v. *Northumberland,* 44 N. H. 628, which was an indictment for not building a bridge, it was decided that the court could not say that the want of a bridge was not a nuisance because upon one side the highway terminated at the distance of eighty-four rods, without connection with any highway beyond, where the land through which it run was a meadow owned by a man living upon the other side of the river, and who had

occasion to carry the produce of this meadow across the river at this point to his farm house and barns—there being no buildings upon this meadow—under such circumstances it was held that it was for the jury to say whether there was such access to the bridge by public highway as to make it of public utility, and subject the town to indictment for not building it.

The principles found in these cases, we think, are decisive here. If, then, the road in question is of such extent as to be useful to persons resident upon it, or to persons owning land over which it passes, the court cannot hold the want of repairs to be no nuisance, but it is for the jury to determine whether there is such occasion for the road as to make it of public utility.

The same principle must apply to a case like the one before us. Here the way in question, at its westerly terminus, runs into Salem street. The owner of the land over which that street was laid, has clearly a right to pass to the westerly end of this crossing, and it is equally clear that the persons living upon that street and whose house lots were bounded upon it, have by an irrevocable claim a similar right; the same may be said in respect to the right of Woodbury in connection with the brick yard and tile factory upon the same land. Whether the occupants of the houses upon the other streets connected with Salem street would have the same right to use the latter as the means of crossing the railroad, it is not necessary to inquire; because, without that, there being some evidence of the way being of public utility, the law leaves it with the selectmen to determine whether it was of such character as to justify the burden necessary to impose upon the town.

If, however, the other streets were so connected with Salem street as to make the use of the latter by residents in the others necessary, or perhaps convenient, for them, it would be difficult to perceive any principle that would exclude them from its use.

Without considering the question arising out of the highway formerly existing at the westerly end of this crossing, we are of the opinion that there were such means of access to it at its westerly terminus as gave to the selectmen jurisdiction and authority to lay it out, and that the question, whether the occasion for it was such as to require it, was exclusively confided to that tribunal.

It is clearly not necessary that this access to the crossing should be by a public highway which the town is bound to maintain, and for defects in which it is liable; but it is sufficient if the public, or so many individuals as to make it of public utility, have access to it, by owning the land at its terminus, by license, by a turnpike road, a railroad depot, or by means of a wharf or landing upon navigable waters, and the like. Neither is it an objection that this right of access is limited and not to the public generally, because roads may rightfully be laid for the accommodation of individuals. This is provided for in our legislation, and is distinctly recognized in *State* v. *Northumberland,* as applicable to a question like the one before us.

The remaining question respects the assessment of damages. But we think, that, as the law has provided a specific remedy by appeal, *certiorari*

does not lie on that account. *Tucker's Petition*, 27 N. H. 410; *Savage* v. *Gulliver*, 4 Mass. 178; *Peebles* v. *Rand*, 43 N. H. 342.

Upon these grounds,

*The writ is refused.*